UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>   v.<br><br>VIACELL, INC., a Delaware corporation, OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES, P.A., FEMPARTNERS, INC., a Delaware corporation and CARITAS ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., a Massachusetts Nonprofit Corporation,<br><br>            Defendants. | Civil Action No. 04-CV-11673 RWZ |

**EXHIBIT 3**
**Part 2 of 2**

Agreements then list the private cord blood banks that have refused to accept PharmaStem's wrongful licenses. *See* Exhibit 6 (emphasis added).

47. By requiring the hospitals or physicians to agree to a blanket refusal to deal with ViaCell, Cryo-Cell and CorCell, PharmaStem's Amnesty Agreements go substantially beyond any legitimate right to exclude arising from PharmaStem's patents. The Amnesty Agreements improperly prevent hospitals and doctors from performing services in connection with ViaCell, Cryo-Cell and CorCell that do not infringe any claim in any of PharmaStem's patents.

48. According to PharmaStem, "80% of the private umbilical cord blood companies in the United States are now operating under its licensed patents." That means that those companies are now paying royalties to PharmaStem pursuant to those licenses. The license agreements are improper and anticompetitive to the extent they require blood banks to pay royalties to PharmaStem for activities that do not infringe PharmaStem's patents.

49. According to PharmaStem, hundreds of doctors have signed PharmaStem's Amnesty Agreements as of the date of this filing. ViaCell, Cryo-Cell and CorCell are aware of numerous doctors and hospitals who have stated they will no longer collect blood for patients wishing to store it at ViaCell, Cryo-Cell and CorCell; of course, they do not know how many others have taken the same position without informing ViaCell, Cryo-Cell and CorCell. PharmaStem continues to target doctors and hospitals. As a result, ViaCell, Cryo-Cell and CorCell are being substantially foreclosed from access to cord blood, a necessary input to the business of providing private cord blood banking services. The degree of foreclosure will continue to rise if PharmaStem is allowed to continue with its wrongful course of conduct unchecked.

50.  In response to PharmaStem's campaign, at least one certain professional society advised obstetricians "to exercise extreme caution" and stated that "[t]hose wishing to insulate themselves from any possible litigation may want to execute the [Amnesty] Agreement." *See* Exhibit 11.

51.  The Amnesty Agreements are purely private agreements between PharmaStem and the other parties who sign them.

52.  Certain obstetricians and hospitals have refused, and are refusing, to collect <u>any</u> umbilical cord blood, regardless of the bank where it will be stored, as a result of PharmaStem's conduct. Patients of such doctors who otherwise would collect and preserve umbilical cord blood suffer clear and irreparable harm. Once the opportunity to collect cord blood at the time of birth is foregone or lost, it can never be recovered.

53.  PharmaStem's wrongful campaign also threatens to give PharmaStem the power to control prices or exclude competition in the market for private cord blood banking services. PharmaStem's power arises from, and is reflected in, its forcing of overbroad license agreements with their attendant royalty fees on private cord blood banks. If PharmaStem succeeds in forcing all or nearly all private cord blood banks to sign such overbroad license agreements, or succeeds through the boycott it is organizing in driving unlicensed private cord blood banks out of business, PharmaStem will have wrongfully acquired monopoly power.

54.  On information and belief, at least some private cord blood banks have raised the prices they charge to customers for storing cord blood as a result of the royalties they must pay PharmaStem. Most or all of the remaining private banks that have signed licenses are likely to raise their prices as well because of the costs to the banks of the royalty payments.

55. Some or all of the royalty fees PharmaStem is charging to private cord blood banks, and some or all of the resulting increase in prices that private cord blood banks charge to families for storage services, constitutes an anticompetitive overcharge. Given the overbroad nature of PharmaStem's licenses, private cord blood banks are paying royalties to PharmaStem (and charging customers for the costs of those royalties) in connection with activities that do not infringe PharmaStem's patents. Thus, at least some consumers are already suffering the anticompetitive effects of PharmaStem's anticompetitive scheme.

56. If PharmaStem succeeds through its wrongful Amnesty Agreements and other conduct in forcing ViaCell, Cryo-Cell and CorCell to accept PharmaStem's wrongful license, or alternatively drives those companies out of the market, families will be left with no choice but to store their blood with a private bank that is required to pay royalty fees to PharmaStem. As a result, families will have no choice but to pay supracompetitive prices for private cord blood banking services as a result of the anticompetitive overcharge created by PharmaStem's wrongful licenses.

## THE RELEVANT MARKET

57. Starting in the late 1980s, several companies began to offer families a service for the collection and storage of cord blood for potential use in therapeutic transfusions. Cord blood that is collected at the time of delivery for preservation is then transported to other facilities, where it is tested and cryogenically preserved. Facilities that store cord blood are referred to as cord blood "banks." Hospitals do not provide cord blood banking services themselves.

58. The only way for cord blood banks to obtain cord blood for storage is for families to decide to preserve cord blood immediately following delivery and elect to store it

19

with a particular bank Once cord blood has been collected and preserved at one blood bank, it typically is not sold or transferred to another blood bank for storage

59. There are two types of cord blood banks: private and public. Private blood banks charge parents fees for the collection, transportation, processing, and storage of cord blood. The parents retain ownership over the blood samples stored in private blood banks and may withdraw the blood without cost

60. Public cord blood banks typically do not charge parents for donating cord blood. Public cord blood banks take ownership of the cord blood they store, and typically charge for the use or withdrawal of cord blood samples. Public cord blood banks tend to store only relatively common HFA types, and there is no guarantee that cord blood donated to public banks will be stored. As a result, parents who donate cord blood to public banks have no assurance that the blood they donated would be available for them in the future as do parents who store cord blood at private banks. Nor is it always possible to find a match from an unrelated donor

61. Many consumers view private cord blood banking as a form of insurance. These consumers value knowing that the cord blood would be there should it be needed in the future. Thus, they are willing to pay to have the cord blood stored, even though only a small fraction of the units stored actually get used at a later date for therapeutic transfusions. In addition, clinical studies show that patients who receive cord blood from related donors have higher survival rates than patients who receive cord blood from unrelated donors. Parents who store cord blood in private banks know that the specific blood they stored will be available for them in the future, if necessary

62  Public cord blood banks do not offer this same insurance feature or family benefit. Because public banks take ownership of the blood units, they are entitled to provide the blood units to someone other than the donor family

63  On information and belief, PharmaStem itself does not view public cord blood banks as reasonable substitutes for, or to be reasonably interchangeable with, private cord blood banks. Among other things, in PharmaStem's communications with doctors, PharmaStem's references to cord blood banks routinely list only private banks, without mentioning public banks.

64  The provision of private cord blood banking services in the United States constitutes a relevant market for purposes of the antitrust laws.

## THREATENED AND ACTUAL INJURY TO VIACELL, CRYO-CELL AND CORCELL

65  The improper boycott PharmaStem is implementing against ViaCell, Cryo-Cell and CorCell is causing substantial damage to their business and threatens to cause additional such damage unless PharmaStem's conduct is enjoined

66  ViaCell, Cryo-Cell and CorCell will be irreparably harmed as a direct and proximate result of PharmaStem's conduct alleged herein unless PharmaStem is enjoined. That irreparable will include, but not be limited to, loss of goodwill, loss of business, and loss of customers. Those harms cannot be adequately remedied through money damages

67  As a direct and proximate result of PharmaStem's conduct alleged herein, including the false and misleading statements PharmaStem has made and the Amnesty Agreements PharmaStem has imposed on health care providers, ViaCell, Cryo-Cell and CorCell also have lost business and are threatened with continuing loss of business from families who otherwise would store cord blood for preservation with ViaCell, Cryo-Cell or

21

CorCell but who now have not and will not do so  As a result of this lost business, ViaCell, Cryo-Cell and CorCell are losing and are threatened with continuing loss of revenues they otherwise would receive and profits they otherwise would earn from storing cord blood

68   In the past few weeks, hospitals and physicians have informed ViaCell, Cryo-Cell and CorCell that they will no longer collect cord blood for patients to supply to ViaCell, Cryo-Cell and CorCell for preservation  Customers of ViaCell, Cryo-Cell and CorCell have also discontinued their plans to store blood at ViaCell, Cryo-Cell and CorCell because their doctors refused to perform the collection  Other hospitals and medical practices have discontinued cord blood collections altogether, resulting in further business losses for ViaCell, Cryo-Cell and CorCell  Various physician associations are advising their members not to collect cord blood for storage by the blood banks that have refused PharmaStem's licenses  Hospitals' and physicians' unwillingness to collect cord blood for families who wish to store the blood with ViaCell, Cryo-Cell and CorCell results directly from PharmaStem's wrongful conduct as alleged herein

69   The injury to ViaCell, Cryo-Cell and CorCell resulting from PharmaStem's conduct constitutes antitrust injury

## COUNT I
### (For Declaratory Judgment under 28 U.S.C. § 2201 Based on Threatened and Actual Violations of the Antitrust Laws)

70   ViaCell, Cryo-Cell and CorCell repeat and incorporate the allegations of Paragraphs 1 through 69 as if set forth here in full

71   ViaCell, Cryo-Cell and CorCell assert this claim for declaratory judgment pursuant to 28 U S C  § 2201 *et seq*

72   There is an actual controversy between ViaCell, Cryo-Cell and CorCell, on one hand, and PharmaStem on the other concerning the lawfulness of PharmaStem's conduct as

22

described in this complaint under the federal antitrust laws, the federal Lanham Act, and other state laws

73. ViaCell, Cryo-Cell and CorCell seek a declaration that PharmaStem's conduct, as described in this Complaint, impermissibly threatens to restrain trade in and has restrained trade in, impermissibly attempts to monopolize, and impermissibly threatens to monopolize the relevant market, all in violation of the federal antitrust laws, 15 U.S.C. § 1 *et seq.*, and in violation of other federal and state law, and justifies the granting of relief to ViaCell under Section 16 of the Clayton Act, 15 U.S.C. § 26.

## COUNT II
**(Violation of 15 U.S.C. § 1 – Threatened Restraint of Trade – Injunctive Relief)**

74. ViaCell, Cryo-Cell and CorCell repeat and incorporate the allegations of Paragraphs 1 through 73 as if set forth here in full.

75. The provision of private cord blood banking services in the United States constitutes a relevant product market.

76. PharmaStem has entered into agreements in restraint of trade with numerous hospitals and/or physicians and, unless enjoined, threatens to enter into additional such agreements in restraint of trade with other hospitals and/or physicians.

77. The agreements PharmaStem has entered into, and threatens to enter into, with hospitals and/or physicians do and will constitute a substantial and unreasonable restraint of trade.

78. The agreements PharmaStem has entered into, and threatens to enter into, with hospitals and/or physicians do and will have a substantial effect on interstate commerce.

79. The agreements PharmaStem has entered into, and threatens to enter into, with hospitals and/or physicians threaten to cause loss or injury to ViaCell, Cryo-Cell and CorCell.

23

80   The loss or injury with which ViaCell, Cryo-Cell and CorCell are threatened as a result of PharmaStem's unreasonable agreements in restraint of trade does and will constitute antitrust injury

81.   The threat of loss or injury from PharmaStem's conduct is substantial and immediate.

82.   ViaCell, Cryo-Cell and CorCell are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 26 against threatened loss or damage in violation of the antitrust laws, including without limitation Section 1 of the Sherman Act, 15 U.S.C. § 1

## COUNT III
(Violation of 15 U.S.C. § 2 – Threatened Monopolization – Injunctive Relief)

83.   ViaCell, Cryo-Cell and CorCell repeat and incorporate the allegations of Paragraphs 1 through 82 as if set forth here in full.

84.   The provision of private cord blood banking services in the United States constitutes a relevant product market

85.   PharmaStem threatens to violate Section 2 of the Sherman Act (15 U.S.C. § 2) by willfully and unlawfully acquiring monopoly power in the relevant market by engaging in its ongoing and continuous pattern of exclusionary and anticompetitive conduct, as alleged above, including but not limited to:

   (a)   making false and misleading statements to doctors, hospitals, families, and the public;

   (b)   intimidating doctors and hospitals through objectively unreasonable and overbroad actual or threatened claims of potential patent liability; and

(c)     entering into wrongful and overbroad licensing agreements with certain private cord blood banks that require the payment of royalties to PharmaStem even for activities that do not infringe any claim of PharmaStem's patents, and

(d)     entering in wrongful and overbroad "Amnesty Agreements" or other agreements with doctors and/or hospitals that require the doctors and/or hospitals to boycott the private cord blood banks that have refused PharmaStem's wrongful license demands, thereby preventing even non-infringing activities

86.     PharmaStem's conduct threatens to cause injury to competition in the form of, among other things, higher prices paid by consumers for private cord blood banking services than they would pay but for PharmaStem's wrongful conduct

87.     PharmaStem's conduct threatens to injure ViaCell, Cryo-Cell and CorCell in the form of, among other things, lost profits resulting from lost opportunities to provide cord blood banking services as a result of PharmaStem's wrongful conduct, including but not limited to the Amnesty Agreements

88.     PharmaStem's improper and anticompetitive conduct will be a direct and proximate cause of the threatened injuries to competition and to ViaCell, Cryo-Cell and CorCell complained of herein

89      The threat of injury and loss from PharmaStem's wrongful conduct is immediate and substantial

90.     The injuries that PharmaStem's conduct threatens to cause to ViaCell, Cryo-Cell and CorCell are of the type that the Sherman and Clayton Acts were intended to prevent and flow from that which makes PharmaStem's acts unlawful under the Sherman and Clayton Acts

25

91   PharmaStem's conduct has, and threatens to have, a substantial affect on interstate commerce

92   ViaCell is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 26 against threatened loss or damage in violation of the antitrust laws, including without limitation Section 2 of the Sherman Act, 15 U.S.C. § 2

### COUNT IV
**(Violation of 15 U.S.C. § 1 –Unreasonable Restraint of Trade – Damages)**

93.   ViaCell, Cryo-Cell and CorCell repeat and incorporate the allegations of Paragraphs 1 through 92 as if set forth here in full

94   The provision of private cord blood banking services in the United States constitutes a relevant product market

95.   PharmaStem has entered into agreements in restraint of trade with numerous hospitals and/or physicians

96.   The agreements PharmaStem has entered into with hospitals and/or physicians substantially and unreasonably restrain trade.

97.   The agreements PharmaStem has entered into with hospitals and/or physicians have had a substantial effect on interstate commerce

98   PharmaStem's conduct has injured competition through, among other things, higher prices paid by consumers for private cord blood banking services than they would pay but for PharmaStem's wrongful conduct

99   PharmaStem's conduct had injured ViaCell, Cryo-Cell and CorCell through, among other things, lost profits resulting from lost opportunities to provide cord blood banking services as a result of PharmaStem's wrongful conduct, including but not limited to the Amnesty Agreements

26

100.  PharmaStem's improper and anticompetitive conduct has directly and proximately caused the injuries to competition and to ViaCell, Cryo-Cell and CorCell complained of herein.

101.  These injuries from PharmaStem's conduct constitute antitrust injury and are of the type that the Sherman and Clayton Acts were intended to prevent and flow from that which makes PharmaStem's acts unlawful under the Sherman and Clayton Acts.

102.  ViaCell, Cryo-Cell and CorCell are entitled to damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, including treble damages, reasonable attorneys' fees, and costs, for the losses suffered from PharmaStem's violation of the antitrust laws, including without limitation Section 1 of the Sherman Act, 15 U.S.C. § 1.

### COUNT V
#### (Violation of 15 U.S.C. § 2 – Attempted Monopolization – Damages)

103.  ViaCell, Cryo-Cell and CorCell repeat and incorporate the allegations of Paragraphs 1 through 102 as if set forth here in full.

104.  There is a dangerous probability that PharmaStem will acquire monopoly power in the market for private blood banking services in the United States.

105.  PharmaStem has acted with specific intent to monopolize.

106.  PharmaStem is engaging in its ongoing and continuous pattern of exclusionary and anticompetitive conduct in furtherance of its attempt to monopolize, as alleged above, including but not limited to:

  (a)  making false and misleading statements to doctors, hospitals, families, and the public;

  (b)  intimidating doctors and hospitals through objectively unreasonable and overbroad actual or threatened claims of potential patent liability; and

27

(c) entering into wrongful and overbroad licensing agreements with certain private cord blood banks that require the payment of royalties to PharmaStem even for activities that do not infringe any claim of PharmaStem's patents, and

(d) entering in wrongful and overbroad "Amnesty Agreements" or other agreements with doctors and/or hospitals that require the doctors and/or hospitals to boycott the private cord blood banks that have refused PharmaStem's wrongful licenses, thereby preventing even non-infringing activities.

107. PharmaStem's conduct has had a substantial effect on interstate commerce.

108. PharmaStem's conduct has injured competition through, among other things, higher prices paid by consumers for private cord blood banking services than they would have paid but for PharmaStem's wrongful conduct.

109. PharmaStem's conduct has injured ViaCell, Cryo-Cell and CorCell through, among other things, lost profits resulting from lost opportunities to provide cord blood banking services as a result of PharmaStem's wrongful conduct, including but not limited to the Amnesty Agreements.

110. PharmaStem's improper and anticompetitive conduct has directly and proximately caused the injuries to competition and to ViaCell, Cryo-Cell and CorCell complained of herein.

111. These injuries from PharmaStem's conduct constitute antitrust injury and are of the type that the Sherman and Clayton Acts were intended to prevent and flow from that which makes PharmaStem's acts unlawful under the Sherman and Clayton Acts.

112. ViaCell, Cryo-Cell and CorCell are entitled to damages pursuant to Section 4 of the Clayton Act. 15 U.S.C. § 15, including treble damages, reasonable attorneys' fees, and

costs, for the losses suffered from PharmaStem's violation of the antitrust laws, including without limitation Section 2 of the Sherman Act, 15 U.S.C. § 2.

## COUNT VI
### (Federal Unfair Competition in violation of the Lanham Act 15 U.S.C. § 1125(a))

113. ViaCell, Cryo-Cell and CorCell repeat and incorporate the allegations of Paragraphs 1 through 112 as if set forth here in full.

114. PharmaStem has made false and misleading statements as to the services ViaCell, Cryo-Cell and CorCell provide.

115. PharmaStem's statements create an actual deception or at least a tendency to deceive a substantial portion of PharmaStem's intended audiences.

116. The deception is material and is likely to influence decisions by families who may desire to have their child's cord blood preserved by ViaCell, Cryo-Cell and CorCell, either directly or by causing physicians and hospitals to refuse to collect cord blood for such patients, or by causing physicians to discourage patients from storing cord blood with those blood banks.

117. These services are provided and sold in and affect a substantial amount of interstate commerce.

118. There is a likelihood that ViaCell, Cryo-Cell and CorCell have been and will be injured by PharmaStem's false statements, including in the form of lost business by customers who either do not store cord blood or store it with a different blood bank.

119. ViaCell, Cryo-Cell and CorCell are entitled to compensatory damages and an injunction against further false statements by PharmaStem.

## COUNT VII
### (Unfair and Deceptive Trade Acts, Practice, and Competition in violation of Mass. Gen. Laws Chapter 93A, §§ 2 and 11)

29

120. ViaCell repeats and incorporates the allegations of Paragraphs 1 through 119 as if set forth here in full.

121. PharmaStem is engaged in trade or commerce as defined by Mass. Gen. Laws Chapter 93A, § 2.

122. PharmaStem's conduct as alleged in this complaint constitutes unfair and deceptive trade acts and practices and unfair competition, in violation of Chapter 93A.

123. PharmaStem's violation of Chapter 93A was willful and knowing.

124. PharmaStem's conduct took place primarily and substantially in Massachusetts.

125. ViaCell has been injured by PharmaStem's unlawful conduct.

126. ViaCell is entitled to recover single and multiple damages for its injuries, attorneys fees, and costs pursuant to Mass. Gen. Laws Chapter 93A, § 11. ViaCell also is entitled to injuctive relief pursuant to Mass. Gen. Laws Chapter 93A, § 11.

### COUNT VIII
### (Tortious Interference with Contract)

127. ViaCell, Cryo-Cell and CorCell repeat and incorporate the allegations of Paragraphs 1 through 126 as if set forth here in full.

128. ViaCell, Cryo-Cell and CorCell have valid contracts or business relationships with families to provide private cord blood banking services that contemplate economic benefit to ViaCell, Cryo-Cell and CorCell.

129. PharmaStem knew about these contracts and business relationships.

130. PharmaStem interfered with these contracts and business relationships for improper purposes and by improper means.

131. PharmaStem's conduct warrants condemnation and deterrence.

132    ViaCell, Cryo-Cell and CorCell have suffered damages as a result of PharmaStem's interference

133    ViaCell, Cryo-Cell and CorCell are entitled to recover compensatory and punitive damages for their injuries

## COUNT IX
### (Tortious Interference with Prospective Advantageous Relationships)

134    ViaCell, Cryo-Cell and CorCell repeat and incorporate the allegations of Paragraphs 1 through 133 as if set forth here in full

135    ViaCell, Cryo-Cell and CorCell have present and past prospective advantageous relationships with families to provide private cord blood banking services that contemplate economic benefit to ViaCell, Cryo-Cell and CorCell

136    PharmaStem knew about these prospective advantageous relationships

137    PharmaStem interfered with these prospective advantageous relationships for improper purposes and by improper means

138    PharmaStem's conduct warrants condemnation and deterrence

139    ViaCell, Cryo-Cell and CorCell have suffered damages as a result of PharmaStem's interference

140    ViaCell, Cryo-Cell and CorCell are entitled to recover compensatory and punitive damages for their injuries

## COUNT IX
### (Unfair and Deceptive Trade Practices in violation of Fla. Stat. § 501.201, et seq.)

141    Cryo-Cell repeats and incorporates the allegations of Paragraphs 1 through 140 as if set forth here in full

142    PharmaStem's conduct as alleged in this complaint constitutes deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act

31

143.  Cryo-Cell has been injured by PharmaStem's unlawful conduct, and are likely to suffer further damage unless said conduct is restrained. Cryo-Cell is entitled to recover damages and counsel fees as a result of PharmaStem's violation.

## PRAYER FOR RELIEF

WHEREFORE, ViaCell, Cryo-Cell and CorCell ask that the Court:

A. Grant a declaratory judgment that PharmaStem's conduct alleged in this Complaint threatens to violate, and violates, the federal antitrust laws, 15 U.S.C. § 1 et seq.;

B. Enter a preliminary and permanent injunction enjoining PharmaStem's ongoing wrongful conduct, including but not limited to enforcement of the Amnesty Agreements, pursuant to, inter alia, 15 U.S.C. § 26 and Mass. Gen. Laws Chapter 93A, § 11;

C. Award treble damages, attorneys' fees, and costs pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, for PharmaStem's violations of the federal antitrust laws, 15 U.S.C. § 1 et seq.;

D. Award ViaCell single and multiple damages, attorneys' fees, and costs pursuant to Mass. Gen. Laws Chapter 93A, § 11, based on PharmaStem's unfair and deceptive trade acts and practices and unfair competition in violation of Chapter 93A, § 2;

E. Award Cryo-Cell compensatory damages, attorneys' fees, and costs pursuant to the Florida Deceptive and Unfair Trade Practices Act, based on PharmaStem's unfair and deceptive trade acts and practices and unfair competition in violation of Chapter 93A, § 2;

F. Award ViaCell, Cryo-Cell and CorCell compensatory and punitive damages; and

G     Grant ViaCell, Cryo-Cell and CorCell such other and further relief as the Court deems just and proper

*/s/ Jeffrey L. Moyer*
Jeffrey L. Moyer, Esq. (#3309)
Alyssa M. Schwartz (#4351)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
On behalf of ViaCell, Inc.

*/s/ Dawn N. Zubrick* /AMS #4351/
Dawn N. Zubrick (#4327)
Dilworth Paxson LLP
First Federal Plaza
Suite 500
Wilmington, DE 19801
(302) 571-9800
On behalf of Cryo-Cell International, Inc.
and CorCell, Inc.

33

*Of Counsel*:
Paul F. Ware, Jr., P.C.
John C. Englander, Esq.
James C. Rehnquist, Esq.
Elaine Herrmann Blais, Esq.
Christopher T. Holding, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
On behalf of ViaCell, Inc.

James J. Rodgers
Evelyn H. McConathy
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103-7595
On behalf of Cryo-Cell International, Inc. and
CorCell, Inc.

34