# GOODWIN | PROCTER

Paul F. Ware Jr., P.C.
617.570.1280
pware@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.227.8591

October 28, 2004

**By Hand Delivery**

The Honorable Rya W. Zobel
United States District Judge
United States District Court for the District of Massachusetts
1 Courthouse Way
Suite 6110
Boston, MA 02210

Re:   **PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.
      Civil Action No. 04-CV-11673 RWZ**

Dear Judge Zobel:

I am writing on behalf of ViaCell, Inc., one of the defendants in this matter. We have learned that the plaintiff, PharmaStem Therapeutics, Inc. filed an Emergency Motion for a Temporary Restraining Order in this matter yesterday. We have not yet been served with the motion, as PharmaStem elected to serve us by first class mail. Nonetheless, we obtained a copy through the Court's electronic docketing system. PharmaStem's motion seeks to have this Court enjoin ViaCell from going forward with a scheduled Preliminary Injunction hearing in another matter currently pending in the United States District Court for the District of Delaware. The hearing PharmaStem seeks to enjoin is set for November 3, and has been scheduled for several weeks.[1] During a conference with Judge Sleet, PharmaStem agreed to this date. Judge Sleet has already tried a case involving these parties, and involving patents that are, for practical purposes, essentially the same as the patents at issue in this case. In addition to ViaCell's preliminary injunction motion, which PharmaStem seeks to enjoin, the Court also will hear ViaCell's related Motion for Contempt based on a prior Order that Judge Sleet entered on July 1, 2004.

The relief PharmaStem seeks here is entirely inappropriate, and we ask that PharmaStem's motion be denied. Neither the law nor the equities support granting PharmaStem the extraordinary remedy of enjoining previously scheduled proceedings in another Federal Court.

---

[1] Attached hereto is the transcript of the October 5 hearing before Judge Gregory Sleet, at which he indicated that a hearing would be set in early November. See Transcript, p. 17.

GOODWIN | PROCTER

The Honorable Rya W. Zobel
October 28, 2004
Page 2

Procedural History

As may be evident from PharmaStem's Motion, this dispute already has a long history in the District of Delaware. PharmaStem initially chose Delaware for its patent infringement action, which was based upon two patents (known as the '681 and the '553 patents). The defendants in that matter were ViaCell and three other so-called "private cord blood banks" – businesses that store umbilical cord blood collected at birth for families. Cord blood, like bone marrow, is rich in stem cells, and certain families choose to store it so it can be available if needed later. PharmaStem's claims were tried to a jury before Judge Sleet in October 2003, and the jury returned a verdict for PharmaStem.

In June 2004, before Judge Sleet ruled on the post-trial motions (and perhaps anticipating an adverse outcome), PharmaStem began an aggressive letter-writing and press-release campaign directed at tens of thousands of obstetricians across the United States. The purpose of this campaign was to coerce obstetricians, who collect cord blood at birth, to cease doing business with ViaCell and the other Delaware defendants. In its materials, PharmaStem stated, inter alia, that the obstetricians would be liable for patent infringement if they "collected cord blood" and provided it to any of the "unlicensed" Delaware defendants, including ViaCell.

PharmaStem's activities were unlawful on multiple levels. Among other things, PharmaStem flatly misrepresented the outcome of the proceedings in Delaware. On July 1, in response to a Motion by the defendants, Judge Sleet entered a temporary restraining order and preliminary injunction against PharmaStem, and made specific findings that PharmaStem's initial letter, sent to over 25,000 obstetricians, was false and misleading.

Thereafter, PharmaStem filed this suit on July 28, 2004. PharmaStem sued ViaCell and two obstetricians. It filed similar suits against other defendants in California, Florida, and Pennsylvania. Although PharmaStem sued on three newer patents, the specifications of the newer patents are identical to the patents at issue in the Delaware action, and the claims of the patents are not substantially different. ViaCell has not yet answered the complaint in this matter, as it has appropriately asked for, and received, an extension of time to respond. On Tuesday, October 26, ViaCell and all other defendants filed a Motion before the Judicial Panel on Multidistrict Litigation to consolidate the various cases PharmaStem has filed (including this case) in the District of Delaware. Notice of the MDL motion will be filed shortly in this Court.

Despite the Court's July 1 injunction, PharmaStem took other actions as well. In particular, on August 20, it mailed – again to tens of thousands of obstetricians – so-called "Amnesty Agreements." A letter accompanying the Amnesty Agreements threatened the obstetricians with patent liability unless they signed the agreements. The Amnesty Agreements purport to require

GOODWIN | PROCTER

The Honorable Rya W. Zobel
October 28, 2004
Page 3

the doctors to agree that they will do no business of any kind with ViaCell – in effect, a total boycott.

On September 15, Judge Sleet issued his ruling on the post-trial motions. Judge Sleet reversed the judgment of infringement but kept intact the jury's findings of validity and enforceability of the two patents at issue. In particular, Judge Sleet entered a judgment of non-infringement as to one of the patents, and ordered a retrial as to infringement for the other patent.

On October 4, ViaCell filed the suit in Delaware that PharmaStem is now complaining about. ViaCell's suit is primarily an antitrust action in which ViaCell alleges, among other things, that the Amnesty Agreements threaten to and do unreasonably restrain trade, in violation of Section 1 of the Sherman Act, because they are overbroad and restrict doctors for taking actions in connection with ViaCell that do not infringe any of PharmaStem's patents. ViaCell also moved for a preliminary injunction to void the Amnesty Agreements that have been signed and to prevent PharmaStem from signing or enforcing any more of them. The Court held a conference in that matter on October 5 and set a hearing for November 3. On November 3, the Court will also hear a Contempt Motion by the defendants in the original infringement case, as well as PharmaStem's motion for a preliminary injunction in the original case. The parties <u>agreed</u> upon a briefing schedule for those various motions.

<u>PharmaStem's Motion Should Be Denied.</u>

The latest act in this saga is PharmaStem's Motion, before this Court, to enjoin ViaCell from going forward with its antitrust-based Preliminary Injunction Motion in Delaware.

PharmaStem's primary argument in support of this Motion is PharmaStem's position that the antitrust lawsuit ViaCell filed in Delaware should be dismissed because, PharmaStem maintains, ViaCell's antitrust claims are properly treated as compulsory counterclaims in this matter. Thus, PharmaStem maintains, ViaCell's antitrust claims can only be filed as counterclaim in the patent infringement case pending in this Court. Under settled Supreme Court precedent, First Circuit precedent, and a decision issued just last year by Chief Judge Young of this Court, PharmaStem's position is wrong. ViaCell's claims are permissive, and ViaCell was entitled to file those claims in Delaware. Moreover, ViaCell's decision to file its claims in Delaware was entirely reasonable and efficient, given Judge Sleet's familiarity with the issues involved and the pendency of related matters before Judge Sleet.

Under a long line of Supreme Court precedent, PharmaStem's attempts to stretch its patents beyond their limits, and to restrain trade in non-patented activity, constitutes both patent misuse and an antitrust violation. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 136-37 (1969); *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 640

GOODWIN | PROCTER

The Honorable Rya W. Zobel
October 28, 2004
Page 4

(1947); *Ethyl Gasoline Corp. v. United States*, 309 U.S. 436, 456 (1940). For purposes of PharmaStem's pending motion, it is important to note that ViaCell's antitrust claim does not allege that PharmaStem's patents are invalid; rather, ViaCell's antitrust claim turns on PharmaStem's <u>misuse</u> of those patents to orchestrate a boycott against ViaCell.[2]

ViaCell's antitrust claims premised on PharmaStem's misuse of its patents are not compulsory counterclaims to the patent infringement claims PharmaStem has asserted in this matter. In *Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661 (1944), the Supreme Court established the rule that an antitrust counterclaim to a patent infringement action is permissive, not mandatory. *Id.* at 671. The First Circuit followed *Mercoid* in *Fowler v. Sponge Products Corp.*, 246 F.2d 223, 227 (1st Cir. 1957). More recently, the Second Circuit interpreted *Mercoid* to mean that antitrust claims premised on patent <u>misuse</u> (such as ViaCell's claims) are permissive under Rule 13, while antitrust claims premised on patent invalidity (<u>unlike</u> ViaCell's claims) are compulsory. *See Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697 (2nd Cir. 2000). Last year, Chief Judge Young adopted the Second Circuit's approach from *Critical-Vac*, following what he called "the patent misuse/patent validity distinction drawn by the Second Circuit". *See Eon Laboratories, Inc. v. SmithKline Beecham Corp.*, 298 F.Supp.2d 175, 181 (D. Mass. 2003).

As described above, ViaCell's antitrust claims are based on patent misuse, not patent invalidity. They are based upon the Amnesty Agreements that PharmaStem sent to over 25,000 obstetricians, not the lawsuit in this Court. Thus, whether this Court follows the broad approach of *Mercoid* and *Fowler*, or the narrower approach of *Critical-Vac* and *Eon Labs*, ViaCell's antitrust claims are <u>not</u> compulsory counterclaims. As a result, ViaCell was perfectly entitled to file those claims as a new action in the District of Delaware. The central premise of PharmaStem's Motion is therefore incorrect, and the Motion should fail.

PharmaStem makes two other arguments in support of its Motion that are equally unavailing. First, PharmaStem accuses ViaCell of improper forum-shopping by having elected to file its antitrust action in the District of Delaware. The history detailed above indicates the contrary – Delaware <u>is</u> the appropriate forum, originally chosen by PharmaStem, as the pending MDL motion sets forth. Second, PharmaStem argues that the "first filed" principle supports its Motion. That argument is meritless, for at least two reasons. To begin with, there is no "first filed" dispute to be resolved here. The only pending case in federal court addressing the anticompetitive nature of PharmaStem's conduct, including its Amnesty Agreements, and raising antitrust claims is ViaCell's antitrust case in Delaware. In addition, as Courts in this District

---

[2] PharmaStem's statement in its Motion that ViaCell's antitrust claims are based on PharmaStem's filing of infringement actions is incorrect. ViaCell's claims are based on the Amnesty Agreements. ViaCell has not alleged that PharmaStem filed sham litigation based on invalid patents.

GOODWIN | PROCTER

The Honorable Rya W. Zobel
October 28, 2004
Page 5

have repeatedly observed, "[t]he first-filed preference, of course, is not to be given great weight." *Lexington Ins. Co. v. Phoenix*, 1996 WL 463672, at *1 (D.Mass. 1996).

Moreover, PharmaStem has raised all of these issues in its opposition to ViaCell's motion for a preliminary injunction in the Delaware action. The issues are before Judge Sleet, who can address them in the context of those motions. There is not a need, therefore, for this Court to reach out in the extraordinary manner requested by PharmaStem to resolve those issues. Moreover, the request for MDL transfer would effectively moot the concerns raised by PharmaStem about which court should hear the pending issues.

Finally, it is certainly the case that asking one federal court to enjoin proceedings in another federal court is an unusual, "extreme" remedy. *Mai Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 986-87 (10th Cir. 1992). This is not such a "extreme" case.

In sum, there is neither any basis nor any need for the extraordinary and drastic remedy PharmaStem seeks from this Court. ViaCell's claims are properly proceeding in the District of Delaware. To the extent PharmaStem has legitimate procedural objections to that matter (and ViaCell respectfully submits that the objections raised in PharmaStem's Motion here are meritless), the Court in Delaware is certainly capable of addressing them. For all these reasons, we ask that PharmaStem's Motion be denied.

I am available to discuss this further at the Court's convenience.

Very truly yours,

Paul F. Ware Jr., P.C.

PFW:jzd
Enclosure
LIBA/1428079.1

cc:   Jeffrey L. Moyer, Esq.
      Paul J. Andre, Esq.
      Ted Little, Esq.