UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


PHARMASTEM THERAPEUTICS,
INC.,

       Plaintiff,

                     Case No. 8:04-cv-1740-T-30TGW
-vs-                  9 November 2004
                      Tampa, Florida
CRYO-CELL INTERNATIONAL,   8:45 a.m.
INC., et al.,

       Defendant.
------------------------/


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES S. MOODY, JR.,
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For the Plaintiff:    PAUL J. ANDRE, ESQUIRE
                      LISA KOBIALKA, ESQUIRE
                      Perkins, Coie, LLP
                      101 Jefferson Drive
                      Menlo Park, California 94025-1114
                      Phone: (650) 838-4370
                      Fax: (650) 838-4350
                      E-mail: PAndre@perkinscoie.com


For the Defendant:    CHARLES F. KETCHEY, JR., ESQUIRE
                      JAMES J. RODGERS, ESQUIRE
                      Akerman, Senterfitt
                      First Union Building
                      100 South Ashley Drive
                      Suite 1500
                      Tampa, Florida 33602-5311
                      Phone: (813) 223-7333
                              (813) 209-5060 direct
                      Fax: (813) 223-2837
                      E-mail: cketchey@akerman.com
*(appearances continued on next page)*

and

CHARLES ALLEN CARLSON, ESQUIRE
Barnett, Bolt, Kirkwood & Long
Post Office Box 3287
Tampa, Florida 33601-3287

Reported By:          Sherrill Lynn Jackson, RPR
                      Official Court Reporter
                      801 North Florida Avenue, Suite 13A
                      Tampa, Florida 33602
                      Phone:  (813) 301-5041


**I N D E X**

                                                        Page

PROCEEDINGS  ....................................     3

CERTIFICATE OF REPORTER  ........................    21

```
 1    (8:45 a.m.)      P R O C E E D I N G S

 2              THE COURT:  Morning.

 3              MR. ANDRE:  Morning, Your Honor.

 4              I first set this hearing because you asked to

 5    change the case management dates, and they seem to be pretty

 6    far out.  Now I understand one party wants a preliminary

 7    injunction hearing; and this morning I'm advised that

 8    there's some thought about the MDL taking these cases.  So,

 9    what do you want to do with the case here while the MDL is

10    considering whether or not to take it?

11              MR. ANDRE:  Your Honor, Paul Andre.  I represent

12    the plaintiff, PharmaStem Therapeutics.

13              We'd like to continue the case here at this point.

14    And what's going on at this point is that the defendants

15    have actually filed a petition with the MDL to consolidate

16    the discovery aspects of the case; and at this point in the

17    case, there is a -- there is a compromise to push it out a

18    little further past the -- the guidelines the Court imposed;

19    but what we're more concerned about at this point is the

20    multiplicity of what's going on in the cases and, thus, the

21    preliminary injunction.

22              We're asking the Court to enjoin the defendant and

23    counterclaim plaintiff in this case from having the same

24    exact counterclaims in two different courts.  So, pending

25    the multi-district decision, which could be -- I'm not sure
```

1    exactly when that will come down, to be quite frank.  I know

2    our -- I think the briefing is due in late November.  So, I

3    don't know how long that panel will take to actually make a

4    decision.  But at this point, we would like to have this

5    aspect of the Court's -- of this case, the multiplicity of

6    it, determined at this level.

7            THE COURT:  Okay.  If you're concerned about

8    multiplicity, aren't you then in agreement with the MDL

9    taking it for discovery purposes?

10           MR. ANDRE:  No, Your Honor.  The multiplicity is

11   not so much in that there is -- we have different defendants

12   in different jurisdictions.  In this particular case, we

13   have the exact same defendant asserting counterclaims in

14   this case, which it was -- and to the extent those

15   counterclaims survive, which it was required to do -- and to

16   its credit, it did file the counterclaims that it filed

17   based on the facts of the case we brought forward.

18           THE COURT:  Didn't you have your hearing in the

19   other court yesterday?

20           MR. ANDRE:  It was last week, and it was a -- a

21   hearing on a preliminary injunction that was filed by the

22   plaintiffs in that case, which would be the defendants in

23   this case.  They were attempting to get an injunction

24   against PharmaStem, the plaintiff in this case, from certain

25   activity.

1            But the -- the decision as to whether this

2    defendant could be joined in that preliminary injunction has

3    not been decided.  They filed a notice of joinder.  We

4    opposed it.  They filed their papers.  The Court in Delaware

5    has not decided.

6            But what's happened here is that the -- the

7    defendants in this case, after they filed the counterclaims

8    and we filed a motion to dismiss those counterclaims, they

9    then went to Delaware and filed the exact same counterclaims

10   based on the exact same facts.

11           Now, our position is that we like that

12   multiplicity of the same parties in different courts.  Now,

13   the fact that the patent case involving the same patents

14   against different defendants are pending in different

15   jurisdictions around the country, we don't think that is

16   multiplicity.  There's going to be different discovery

17   required and different theories of the case, depending on

18   who --

19           THE COURT:  Except somebody's got to construe the

20   patent, and you wouldn't want there to be separate

21   constructions of the patent, would you?

22           MR. ANDRE:  Well, I think that the construction of

23   the patents will be -- obviously there is a chance that the

24   interpretation of the claims may vary slightly, but I don't

25   think that's an issue that we're obviously too concerned

1    with, because this claim is pretty straightforward, in our

2    opinion.  So, we think that the construction, however it

3    comes down, will not vary greatly in any construction

4    imaginations.  It's just something that we filed in

5    different jurisdictions obviously because of personal

6    jurisdiction on the defendants.  We've filed cases in five

7    different district courts around the country with the same

8    two patents, and the jurisdictional aspect of the defendants

9    requires us to file it in those various jurisdictions.

10            THE COURT:  Unless they consent to jurisdiction

11   somewhere else.

12            MR. ANDRE:  At this point, they could consent to

13   jurisdiction elsewhere, that's correct, Your Honor.

14            THE COURT:  Sounds like at least one defendant is

15   trying to get into the case somewhere else.

16            MR. ANDRE:  That's exactly right.

17            THE COURT:  So, they have no problem with

18   jurisdiction; right?

19            MR. ANDRE:  At this point.  At this point.  They

20   do obviously want to have the case transferred for reasons

21   of their own.  We sued each one of these defendants in their

22   back yards in courts that are most convenient to them, and

23   why they want to transfer to an out-of-state court is

24   obviously up to -- that's their decision.

25            We have a right as a plaintiff to pick the forum

1  that we think is best suited for us, and we've done so.  And

2  nothing that the defendants have raised has indicated what

3  we've done is improper.  For example, Cryo-Cell is located

4  in Clearwater, Florida; and the defendant, Dr. Zafran, is

5  located, I think, in the Tampa Bay area as well.  So, suing

6  them in this court is a proper jurisdiction to sue them in.

7  And the MDL, for discovery purposes, taking the case, if

8  that is the case, wherever it happened to transfer -- maybe

9  it will transfer to this court or California or wherever the

10  panel decides, if it does it decide to consolidate --

11         THE COURT:  Well, they generally pick the oldest

12  case; and isn't that in Delaware --

13         MR. ANDRE:  No, it's not, Your Honor.

14         THE COURT:  -- or Pennsylvania?  Where is it?

15         MR. ANDRE:  Well, what it -- two years ago there

16  was a case filed in Delaware regarding -- we'll call them

17  patents one and two, and that case filed in Delaware went to

18  trial, and a jury verdict resulted favorably for my client.

19  And then after the jury verdict came down, during post-trial

20  motions, we filed another round of lawsuits with patents

21  three and four, two different patents, issued just before

22  the trial in the first case.  So, you have two very distinct

23  cases here.

24         Now, they are related patents, meaning from the

25  same patent family; but they're different claims, different

1    defendants, and different legal theories of patent

2    infringement that are being pursued.  So, the first filed

3    case was actually filed, I believe, July 28th in this court,

4    as well as courts in California and in Boston and in

5    Pennsylvania.

6              THE COURT:  But they are completely separate

7    patents?  You're saying patent one and two aren't involved

8    in this case?

9              MR. ANDRE:  Not at all, Your Honor.

10             THE COURT:  What's involved in the case in which

11   the defendant's trying to intervene in some other

12   jurisdiction?

13             MR. ANDRE:  Those are antitrust claims.

14             THE COURT:  Which patents?  Three and four or --

15             MR. ANDRE:  Three and four.  Three, four, and then

16   actually a fifth patent, five.  They are alleging antitrust

17   counterclaims involving proposed agreements entered into

18   with various healthcare providers regarding patents three,

19   four, and five.  So, patents one and two, I think it's safe

20   to say, are separate and distinct.  That case will be going

21   to the appellate court very shortly, I imagine.  The parties

22   have filed 54(b) motions and 1292 motions as well to get

23   that case to the appellate court, for it -- the judge in

24   Delaware has ordered a retrial on -- for purposes of patent

25   number one.  He set aside the finding of infringement on

1   patent number two on September 15th.

2          THE COURT:  The case in which they are trying to

3   intervene, was that filed before my case was filed?

4          MR. ANDRE:  It was not, Your Honor.

5          What happened in Boston was that we filed a case

6   against one of the defendants in the -- in Boston, and

7   they -- they asked for an extension of time to answer our

8   complaint, and we gave them the extension of time; and

9   during that time, they filed a claim in Delaware, and -- for

10  the antitrust claims regarding the patents we have sued on

11  in Boston.  And that's the reason we went forward with a

12  temporary restraining order, because they filed for a

13  complaint and preliminary injunction at that point.  We have

14  not even answered the complaint.  We have moved to dismiss

15  it.

16         The -- the case in Florida, in your court, these

17  parties just recently joined and amended the complaint in

18  Delaware to try to join in that case as well.  So, the first

19  filed cases regarding patents three and four were filed in

20  this court and various other courts.

21         THE COURT:  All right.  Well, why is it necessary

22  to put the trial of this case off to the summer of 2007, is

23  it?

24         MR. ANDRE:  I believe that's correct, Your Honor.

25  What we had -- I'll let Mr. Rodgers discuss that.  We had

1    proposed the, I think, 22-month trial; and the defendants

2    asked for a much longer time.  And I believe the December

3    date was a compromise just to try to reach a compromise.  We

4    had actually proposed a much earlier trial date; but just in

5    the spirit of cooperation, we tried to split the baby, as it

6    were, to accommodate the defendants, because they said the

7    complexity of the case required them to need more time.

8              So, I'll let Mr. Rodgers address that.

9              THE COURT:  All right.

10             MR. KETCHEY:  Judge, I'd like to introduce -- I'm

11   Charlie Ketchey.  I'd like to introduce Jim Rodgers, who is

12   going to handle this on behalf of the defendants.

13             MR. RODGERS:  Good morning, Your Honor.

14             Your Honor's first question was what should we do

15   with this case.  Our suggestion, respectfully, would be that

16   we put it on hold for several months while we see what the

17   judicial panel on multi-district litigation decides to do

18   with it.

19             We would expect that this matter would come on to

20   the panel's January calendar and be heard at that time and

21   that by shortly thereafter we would have a decision as to

22   how -- whether or not these matters would be coordinated for

23   pretrial proceedings in Delaware, as we have asked, or some

24   other disposition.

25             I would respectfully disagree with a couple of

1    things Mr. Andre has said about the relationship between the

2    patents and the claims that are asserted in all these

3    various cases.  First of all, as he did point out, there is

4    a retrial scheduled on the 681 patent.  It hasn't been

5    calendared, but it's pursuant to Judge Sleet's post-trial

6    order.

7         That patent involves a levitation and a claim,

8    which is precisely the same limitation that's found in what

9    Mr. Andre refers to as patents three and four, which are the

10   patents they assert here.  These patents are so closely

11   related that it makes little sense to consider them

12   separately.

13        Your Honor pointed out quite correctly the true

14   risk of multiplicity here is of five different constructions

15   of the same patents in different districts and/or of

16   inconsistent rulings on pretrial motions that present

17   similar fact patterns.  I would -- as to the scheduling

18   issue, we propose the relatively long schedule for a couple

19   of reasons.  One point is that, depending on how the issues

20   shake out with regard to where these claims should be

21   litigated, we may very well want to amend our counterclaims

22   here to assert the antitrust claim that's asserted in

23   Delaware; and that antitrust claim, by the way, relates not

24   just to patents three and four but to a pattern of conduct

25   that relates to all five of PharmaStem's patents.  And that

1    would put it on as a Track 3 case under this Court's

2    procedures.

3            As to why it's going to take some time, again, the

4    fact is that, again, although this is one case with two

5    defendants in Florida, it is clearly related to what's going

6    on in these other districts in these other cases involving

7    the other defendants.  And so, that's one of the reasons why

8    it perhaps will take some time for this case to work its way

9    through.

10           Another factor in the back of our minds is that we

11   expect that there will be petitions to re-examine these

12   patents filed in the patent office in the very near future,

13   which is another matter which could affect the way these

14   cases ought to progress.

15           And so, for all of those reasons, we think that

16   the lengthy time schedule is appropriate, but, more

17   importantly, that the right thing to do at this time would

18   be to defer all further action in this case until the panel

19   has had a chance to make a ruling.  I think the things that

20   would actually be delayed would be the initial disclosures

21   and to defer any ruling on a motion to dismiss the

22   counterclaims.

23           I think it's instructive, Your Honor, to note that

24   in early October when PharmaStem moved to dismiss our

25   counterclaims here, they said very simply these claims

1    should have been, could have been brought in Delaware.  Two

2    weeks later, they moved for an injunction here and said

3    these claims must have been brought -- the claims that are

4    asserted in Delaware must have been brought here.  So, we

5    have kind of an inconsistent position that's been asserted.

6            Thank you.

7            THE COURT:  Are you willing to consent to

8    jurisdiction in Delaware?

9            MR. RODGERS:  Oh, yes, Your Honor.  We're a

10   Delaware corporation.  And so, that's never been an issue.

11   We were a defendant in the original Delaware case, and

12   PharmaStem chose to file on the first two patents.

13           THE COURT:  And Delaware is where Judge Sleet is?

14           MR. RODGERS:  That's correct, Your Honor; and just

15   as a clarification, Dr. Zafran, the other defendant in the

16   case here, doesn't even live in this district.  He's from

17   Broward County.

18           THE COURT:  Who is Dr. Zafran?

19           MR. RODGERS:  He is the additional defendant that

20   was joined in this case, Your Honor; and in each of these

21   cases that PharmaStem has filed fairly recently, they have

22   sued one of the cord blood banks that were defendants in the

23   original Delaware case, and they added doctors or other

24   healthcare providers because of a theory -- we're not quite

25   sure what the theory is at this point, but of some theory of

1    infringement; and Dr. Zafran was sued in this case.

2                THE COURT:  All right.

3                MR. RODGERS:  Thank you.

4                MR. ANDRE:  Your Honor, I would just like to

5    address one issue.  The -- we received the defendant's brief

6    in this matter regarding the motion for the injunction last

7    night, and there is -- Mr. Rodgers has brought it up again

8    regarding the statements we made in motions to dismiss that

9    these claims or these issues were brought in the Delaware

10   case.  We're talking about the first Delaware case that was

11   filed several years ago, three years ago now.

12                In that particular case, the -- the letters that

13   they complain of in this case was brought to that Court's

14   attention, and they sought a remedy in that case, and they

15   received the remedy that they sought.  So, that was the

16   basis for dismissal, but they've already sought their

17   judicial remedy in the Delaware one case.  We're not saying

18   that it should have been ripe to sustain a new set of claims

19   in an entirely new case, in the Delaware two case.  So, I

20   think there's a little bit of slight of hand going on here

21   that -- as far as what remedies they have available to them.

22   They sought it in the first Delaware case.  Now they have

23   filed a second Delaware case.  And we say those claims in

24   the second case are the exact same claims they filed here.

25                I mean, it's something that -- one thing they

1  don't explain in their brief and they haven't explained here

2  today, they have counterclaims they filed; and the

3  counterclaims in this case are the ones for the interference

4  with contractual relations, the Laminak 43,8 claims, the

5  deception or unfair trade practices, and patent misuse.

6  Those exact same claims based on the exact same facts have

7  now also been filed in another federal court.

8          And all we're asking for, our only remedy, other

9  than fighting it out in this court and that court -- and

10  even if the case does get transferred to the multi-district

11  litigation aspect, that's just for the pretrial discovery.

12  We still have to try them in this court, and we have to try

13  them in Delaware.

14          We'll have those claims pending in this court and

15  in the Delaware court for trial; and having that

16  multiplicity, our only remedy to solve that is to have this

17  Court enjoin them from pursuing the exact same claims in two

18  different courts.

19          THE COURT:  Well, it's not your only remedy.

20  Judge Sleet could deny the motion to intervene; right?

21          MR. ANDRE:  That's true.  It's either have this

22  Court to enjoin them from moving forward -- because that's

23  what the case law and the precedence has dictated, that this

24  Court has the equitable powers to enjoin them, because this

25  is the first-filed case, et cetera --

```
 1              THE COURT:  Or to raise these claims before or
 2      should have raised them before in prior litigation.
 3      Judge Sleet would know a lot more about that than I would,
 4      wouldn't he?
 5              MR. ANDRE:  The -- the claims in the Delaware one
 6      action?
 7              THE COURT:  You're saying that their counterclaims
 8      that they filed in this case either were or should have been
 9      raised in the Delaware action -- the prior Delaware action?
10      I think that's what you just said.
11              MR. ANDRE:  No.  In our motion to dismiss, we
12      stated that the cause of action that they set forward -- it
13      was an argument we made in the motion to dismiss, saying
14      that the -- the judicial remedy had already been sought and
15      obtained in the first Delaware action.  That's correct.
16              THE COURT:  So, it's res judicata.
17              MR. ANDRE:  It's a res judicata theory of the
18      case.
19              THE COURT:  It would be a lot easier for
20      Judge Sleet to figure it out than it would be for me to
21      figure out.
22              MR. ANDRE:  In theory, yes, that's correct,
23      Your Honor.
24              THE COURT:  Am I -- am I intuiting correctly that
25      for some reason they liked Judge Sleet and for some reason
```

1    you prefer to have some other judge or even some judge

2    that's stupid on patents down here in Florida?

3        MR. ANDRE:  Your Honor, I'm -- I think your

4    intuition is right, they would like to have Judge Sleet.

5    Judge Sleet has provided the defendants in this case with a

6    favorable ruling on a -- the remedy they sought earlier

7    regarding the preliminary injunction against my client.

8    They filed a -- a motion with the Court regarding a June 2nd

9    letter that my client sent out to obstetricians informing

10   them about the previous trial.  They moved for preliminary

11   injunction, and Judge Sleet granted the preliminary

12   injunction, I think, the day after -- maybe two days after

13   it was filed before we even had a chance to oppose the

14   preliminary injunction.

15       So, that fact pattern is something that I believe

16   the defendants -- they believe Judge Sleet is obviously in

17   tune with their arguments.

18       So, it is something that -- that is the argument

19   we made, that they sought that remedy and they got the

20   injunction that they wanted regarding the June 2nd letter.

21       Now, as far as the other basis of their claims and

22   their counterclaims regarding what they call the amnesty

23   agreement and other aspects, you know, they can bring those

24   in this court and try to have them sustained if they believe

25   there's any legal cause of action; and this Court is as

1    familiar with that cause of action as -- well, Judge Sleet

2    is educated about it now because we had the hearing there

3    last week, but those are new causes of action.  They were

4    not part of the original case in Delaware.

5            So, our belief is that we would like to pursue our

6    claims in the courts that we choose and the rights of the

7    plaintiff to choose the forum as long as it's for all legal

8    purposes.  It is a right that we would like to retain to

9    enforce our patents the way we see fit.  And we're a small

10   company.  When we go to Delaware and you see 20 attorneys

11   sitting on the other side of them and there's usually two of

12   us, it's a bit formidable for us.

13           So, our -- the theory of our remedy, I guess, or

14   our reasons for coming to this court, other than the fact

15   that we disagree with the Court's assessment regarding the

16   Court's knowledge of patent law probably -- but it is our

17   choice of forum, and it doesn't inconvenience them.  It's in

18   their backyard.

19           So, with respect to the argument that they make

20   that the plaintiff in this case has said that they should go

21   to Delaware, we don't think they should file claims in

22   Delaware.  We think if they file counterclaims, they should

23   be in this court.

24           What we said in our motion to dismiss was they've

25   already sought their remedy in Delaware in one particular

1    aspect with the June 2nd letter.  They can't go in and

2    double-dip and get claims on the exact same facts that

3    they've already, you know, obtained the remedy from in a

4    previous case.

5         To the extent they filed a new case in Delaware,

6    that's where we have the problems, the Delaware two case,

7    because there the exact same counterclaims are in place than

8    they are in this court.

9         THE COURT:  Okay.

10         MR. ANDRE:  Thank you, Your Honor.

11         THE COURT:  I'll approve the case management dates

12    sought by the parties.  I'm going to stay this case for 120

13    days to see what MDL does with it.  If nothing is resolved

14    in the 120 days, you can file a motion asking for a

15    preliminary injunction hearing.  I'll give you the hearing,

16    and then I'll decide what to do with it.

17         I can tell you upfront that my first reaction is

18    it seems appropriate that all these related cases across the

19    country ought to be resolved by one court, whether it's

20    Judge Sleet or some other court.  It's neither here nor

21    there to me, but it doesn't make -- it's not for good

22    judicial economy to have five different courts trying to

23    construe the same patents.  So, I'll be glad to give you the

24    preliminary injunction hearing.

25         I can tell you where I'll be coming from and where

1    you will need to direct your persuasion.    It would seem

2    appropriate to me that some court take the lead and construe

3    these patents; and then if we have separate trials on what

4    the separate parties are doing about them, that's fine.    But

5    to me that would seem a strong reason why the MDL would have

6    all the pretrial discovery done in a consolidated fashion,

7    even to the point of having the patents construed through

8    the Martina hearing.

9           And the little bit I know about patents is at

10   least I do know that the federal district is now considering

11   changing the standards that you're supposed to use in trying

12   to construe patents; and we don't even know what that is

13   right now.  Is that right?

14          MR. ANDRE:  I believe the federal circuit is

15   looking at it -- it's a big case -- that's correct, Your

16   Honor; and the Supreme Court is considering that aspect.

17          THE COURT:  Okay.  All right.  Well, if you still

18   have these burning issues pending after 120 days, let me

19   know, and I'll consider them.

20          MR. ANDRE:  Thank you, Your Honor.

21          THE COURT:  All right.  Thank you.

22          (This matter was adjourned at 9:10 a.m.)

23                    - - - - -

24

25

1                    CERTIFICATE OR REPORTER

2

3    STATE OF FLORIDA          )

4    CIRCUIT OF HILLSBOROUGH )

5

6              I, SHERRILL LYNN JACKSON, Official Court Reporter

7    for United States District Court, Middle District of

8    Florida, Tampa Division,

9              DO HEREBY CERTIFY that I was authorized to and

10   did report in shorthand the proceedings and evidence in the

11   above-styled cause, as stated in the caption hereto, and

12   that the foregoing pages numbered 1 to 21, inclusive,

13   constitute a true and correct transcription of my shorthand

14   report of said proceedings and evidence.

15

16             Dated this 25th day of November, 2004.

17

18                         Sherrill Lynn Jackson, RPR

19

20

21

22

23

24

25

-

-- [58]

------------------------ [1] 1/9

-vs- [1] 1/6

# A

a -- [4] 3/17 4/20 17/6 17/8
a.m [3] 1/7 3/1 20/22
about [10] 3/8 3/19 4/7 11/1 14/10 16/3
 17/10 18/2 20/4 20/9
above-styled [1] 21/11
accommodate [1] 10/6
across [1] 19/18
action [9] 12/18 16/6 16/9 16/9 16/12
 16/15 17/25 18/1 18/3
action -- [1] 16/9
activity [1] 4/25
actually [6] 3/15 4/3 8/3 8/16 10/4 12/20
added [1] 13/23
additional [1] 13/19
address [2] 10/8 14/5
adjourned [1] 20/22
advised [1] 3/7
affect [1] 12/13
after [5] 5/7 7/19 17/12 17/12 20/18
after -- [1] 17/12
again [3] 12/3 12/4 14/7
against [4] 4/24 5/14 9/6 17/7
ago [7] 7/15 14/11 14/11
agreement [2] 4/8 17/23
agreements [1] 8/17
Akerman [1] 1/20
akerman.com [1] 1/24
al [1] 1/8
all [15] 8/9 9/21 10/9 11/2 11/3 11/25
 12/15 12/18 14/2 15/8 18/7 19/18 20/6
 20/17 20/21
alleging [1] 8/16
ALLEN [1] 2/2
already [4] 14/16 16/14 18/25 19/3
also [1] 15/7
although [1] 12/4
am [2] 16/24 16/24
amend [1] 11/21
amended [1] 9/17
amnesty [1] 17/22
and -- [1] 9/9
ANDRE [4] 1/14 3/11 11/1 11/9
another [4] 7/20 12/10 12/13 15/7
answer [1] 9/7
answered [1] 9/14
antitrust [5] 8/13 8/16 9/10 11/22 11/23
any [3] 6/3 12/21 17/25
appearances [2] 1/13 1/25
appellate [2] 8/21 8/23
appropriate [3] 12/16 19/18 20/2
approve [1] 19/11
are [20] 5/14 6/22 7/24 8/2 8/6 8/13 8/16
 8/20 9/2 11/2 11/9 11/10 13/3 13/7
 14/24 15/3 18/3 19/7 19/8 20/4
area [1] 7/5
aren't [2] 4/8 8/7
argument [3] 16/13 17/18 18/19
arguments [1] 17/17
around [2] 5/15 6/7
as [25]
as -- [1] 18/1
Ashley [1] 1/21
aside [1] 8/25
asked [4] 3/4 9/7 10/2 10/23
asking [3] 3/22 15/8 19/14

aspect [5] 4/5 6/8 15/11 19/1 20/16
aspects [2] 3/16 17/23
assert [2] 11/10 11/22
asserted [4] 11/2 11/22 13/4 13/5
asserting [1] 4/13
assessment [1] 18/15
attempting [1] 4/23
attention [1] 14/14
attorneys [1] 18/10
authorized [1] 21/9
available [1] 14/21
Avenue [1] 2/5

# B

baby [1] 10/5
back [2] 6/22 12/10
backyard [1] 18/18
banks [1] 13/22
Barnett [1] 2/2
based [3] 4/17 5/10 15/6
basis [2] 14/16 17/21
Bay [1] 7/5
be [23]
be -- [1] 3/25
because [10] 3/4 6/1 6/5 9/12 10/6
 13/24 15/22 15/24 18/2 19/7
been [12] 5/3 11/4 13/1 13/3 13/3 13/4
 13/5 13/10 14/18 15/7 16/8 16/14
before [6] 1/11 7/21 9/3 16/1 16/2 17/13
behalf [1] 10/12
being [1] 8/2
belief [1] 18/5
believe [7] 8/3 9/24 10/2 17/15 17/16
 17/24 20/14
best [1] 7/1
between [1] 11/1
big [1] 20/15
bit [3] 14/20 18/12 20/9
blood [1] 13/22
Bolt [1] 2/2
Boston [4] 8/4 9/5 9/6 9/11
Box [1] 2/3
brief [2] 14/5 15/1
briefing [1] 4/2
bring [1] 17/23
brought [7] 4/17 13/1 13/3 13/4 14/7
 14/9 14/13
brought -- [1] 13/3
Broward [1] 13/17
Building [1] 1/21
burning [1] 20/18

# C

calendar [1] 10/20
calendared [1] 11/5
California [1] 1/16 7/9 8/4
call [2] 7/16 17/22
came [1] 7/19
can [4] 17/23 19/14 19/17 19/25
can't [1] 19/1
caption [1] 21/11
CARLSON [1] 2/2
case [73]
case -- [1] 20/15
cases [10] 3/8 3/20 6/6 7/23 9/19 11/3
 12/6 12/14 13/21 19/18
cause [4] 16/12 17/25 18/1 21/11
causes [1] 18/3
certain [1] 4/24
CERTIFICATE [2] 2/11 21/1
CERTIFY [1] 21/9
cetera [1] 15/25

chance [3] 5/23 12/19 17/13
change [1] 3/5
changing [1] 20/11
CHARLES [2] 1/19 2/2
Charlie [1] 10/11
choice [1] 18/17
choose [2] 18/6 18/7
chose [1] 13/12
circuit [2] 20/14 21/4
cketchey [1] 1/24
claim [5] 6/1 9/9 11/7 11/22 11/23
claims [23]
clarification [1] 13/15
clearly [1] 12/5
Clearwater [1] 7/4
client [3] 7/18 17/7 17/9
closely [1] 11/10
Coie [1] 1/15
come [2] 4/1 10/19
comes [1] 6/3
coming [2] 18/14 19/25
company [1] 18/10
complain [1] 14/13
complaint [4] 9/8 9/13 9/14 9/17
completely [1] 8/6
complexity [1] 10/7
compromise [3] 3/17 10/3 10/3
concerned [3] 3/19 4/7 5/25
conduct [1] 11/24
consent [3] 6/10 6/12 13/7
consider [2] 11/11 20/19
considering [3] 3/10 20/10 20/16
consolidate [2] 3/15 7/10
consolidate -- [1] 7/10
consolidated [1] 20/6
constitute [1] 21/13
construction [3] 5/22 6/2 6/3
constructions [2] 5/21 11/14
construe [4] 5/19 19/23 20/2 20/12
construed [1] 20/7
continue [1] 3/13
continued [1] 1/25
contractual [1] 15/4
convenient [1] 6/22
cooperation [1] 10/5
coordinated [1] 10/22
cord [1] 13/22
corporation [1] 13/10
correct [7] 6/13 9/24 13/14 16/15 16/22
 20/15 21/13
correctly [2] 11/13 16/24
could [6] 3/25 5/2 6/12 12/13 13/1 15/20
counterclaim [1] 3/23
counterclaims [17] 3/24 4/13 4/15 4/16
 5/7 5/8 5/9 8/17 11/21 12/22 12/25 15/2
 15/3 16/7 17/22 18/22 19/7
country [3] 5/15 6/7 19/19
County [1] 13/17
couple [2] 10/25 11/18
court [36]
court -- [1] 15/9
Court's [5] 4/5 12/1 14/13 18/15 18/16
Court's -- [1] 4/5
courts [9] 3/24 5/12 6/7 6/22 8/4 9/20
 15/18 18/6 19/22
credit [1] 4/16
CRYO-CELL [2] 1/7 7/3

# D

date [2] 10/3 10/4
Dated [1] 21/15
dates [2] 3/5 19/11

## D

day [2] 17/12 21/15
days [4] 17/12 19/13 19/14 20/18
December [1] 10/2
deception [1] 15/5
decide [2] 7/10 19/16
decided [2] 5/3 5/5
decides [2] 7/10 10/17
decision [5] 3/25 4/4 5/1 6/24 10/21
defendant [10] 1/9 1/19 3/22 4/13 5/2 6/14 7/4 13/11 13/15 13/19
defendant's [2] 8/11 14/5
defendants [19] 3/14 4/11 4/22 5/7 5/14 6/6 6/8 6/21 7/2 8/1 9/6 10/1 10/6 10/12 12/5 12/7 13/22 17/5 17/16
defendants -- [1] 17/16
defer [2] 12/18 12/21
Delaware [36]
Delaware -- [1] 7/12
delayed [1] 12/20
deny [1] 15/20
depending [2] 5/17 11/19
determined [1] 4/6
dictated [1] 15/23
did [3] 4/16 11/3 21/10
Didn't [1] 4/18
different [18] 3/24 4/11 4/12 5/12 5/14 5/14 5/16 5/17 6/5 6/7 7/22 7/25 8/1 11/14 11/15 15/18 19/22
direct [2] 1/23 20/1
disagree [2] 10/25 18/15
disclosures [1] 12/20
discovery [6] 3/16 4/9 5/16 7/7 15/11 20/6
discuss [1] 9/25
dismiss [8] 5/8 9/14 12/21 12/24 14/8 16/11 16/13 18/24
dismissal [1] 14/16
disposition [1] 10/24
distinct [2] 7/22 8/20
district [8] 1/1 1/1 1/12 6/7 13/16 20/10 21/7 21/7
districts [2] 11/15 12/6
DIVISION [1] 1/2 21/8
do [10] 3/9 3/9 4/15 6/20 10/14 10/17 12/17 19/16 20/10 21/9
do -- [1] 4/15
doctors [1] 13/23
does [3] 7/10 15/10 19/13
doesn't [3] 13/16 18/17 19/21
doing [1] 20/4
don't [6] 4/3 5/15 5/24 15/1 18/21 20/12
done [3] 7/1 7/3 20/6
double-dip [1] 19/2
down [4] 4/1 6/3 7/19 17/2
Dr. [4] 7/4 13/15 13/18 14/1
Dr. Zafran [4] 7/4 13/15 13/18 14/1
Drive [2] 1/16 1/21
due [1] 4/2
during [2] 7/19 9/9

## E

E-mail [2] 1/18 1/24
each [2] 6/21 13/20
earlier [2] 10/4 17/6
early [1] 12/1
easier [1] 16/19
economy [1] 19/22
educated [1] 18/2
either [2] 15/21 16/8
else [2] 6/11 6/15

elsewhere [1] 6/13
enforce [1] 18/9
enjoin [4] 3/22 15/17 15/22 15/24
entered [1] 8/17
entirely [1] 14/19
equitable [1] 15/24
ESQUIRE [5] 1/14 1/15 1/19 1/20 2/2
et [2] 1/8 15/25
et cetera [1] 15/25
even [7] 9/14 13/16 15/10 17/1 17/13 20/7 20/12
evidence [2] 21/10 21/14
exact [10] 3/24 4/13 5/9 5/10 14/24 15/6 15/6 15/17 19/2 19/7
exactly [2] 4/1 6/16
example [1] 7/3
Except [1] 5/19
expect [2] 10/19 12/11
explain [1] 15/1
explained [1] 15/1
extension [2] 9/7 9/8
extent [2] 4/14 19/5

## F

fact [5] 5/13 11/17 12/4 17/15 18/14
factor [1] 12/10
facts [4] 4/17 5/10 15/6 19/2
fairly [1] 13/21
familiar [1] 18/1
family [1] 7/25
far [3] 3/6 14/21 17/21
fashion [1] 20/6
favorable [1] 17/6
favorably [1] 7/18
Fax [2] 1/17 1/24
federal [3] 15/7 20/10 20/14
fifth [1] 8/16
fighting [1] 15/9
figure [2] 16/20 16/21
file [6] 4/16 6/9 3/12 18/21 18/22 19/14
filed [34]
finding [1] 8/25
fine [1] 20/4
first [12] 1/21 3/4 7/22 8/2 9/18 10/14 11/3 13/12 14/22 14/22 16/15 19/17
first-filed [1] 15/25
fit [1] 18/9
five [6] 6/6 8/16 8/19 11/14 11/25 19/22
FLORIDA [12] 1/1 1/7 1/22 2/3 2/5 2/6 7/4 9/16 12/5 17/22 21/3 21/8
foregoing [1] 21/12
formidable [1] 12/12
forum [2] 6/25 18/7 18/17
forward [4] 4/17 9/11 15/22 16/12
forward -- [1] 15/22 16/12
found [1] 11/24
four [8] 7/21 8/14 8/15 8/15 8/19 9/19 11/9 11/24
frank [1] 4/1
further [2] 3/18 12/18
future [1] 12/12

## G

gave [1] 9/8
generally [1] 7/11
get [5] 4/23 6/15 8/22 15/10 19/2
give [2] 19/15 19/23
glad [1] 19/23
go [3] 18/10 18/20 19/1
going [9] 3/14 3/20 5/16 8/20 10/12 12/3 12/5 14/20 19/12
good [2] 10/13 19/21

got [2] 5/19 17/19
granted [1] 17/11
greatly [1] 6/3
guess [1] 18/9
guidelines [1] 3/18

## H

had [7] 9/25 9/25 10/4 12/19 16/14 17/13 18/2
had -- [1] 9/25
hand [1] 14/20
handle [1] 10/12
happened [3] 5/6 7/8 9/5
has [2] 5/2 5/5 7/2 8/24 11/1 12/19 13/21 14/7 15/23 15/24 17/5 18/20
hasn't [1] 11/4
have [42]
haven't [1] 15/1
having [3] 3/23 15/15 20/7
he [4] 8/25 11/3 13/19 16/4
He's [1] 13/16
healthcare [2] 8/18 13/24
heard [1] 10/20
hearing [9] 3/4 3/7 4/18 4/21 18/2 19/15 19/15 19/24 20/8
here [16] 3/9 3/13 5/6 7/23 11/10 11/14 11/22 12/25 13/2 13/4 13/16 14/20 14/24 15/1 17/2 19/20
HEREBY [1] 21/9
hereto [1] 21/11
HILLSBOROUGH [1] 21/4
hold [1] 10/16
Honor [20] 3/3 3/11 4/10 6/13 7/13 8/9 9/4 9/24 10/13 11/13 12/23 13/9 13/14 13/20 14/4 16/23 17/3 19/10 20/16 20/20
Honor's [1] 10/14
HONORABLE [1] 1/11
how [3] 4/3 10/22 11/19
how -- [1] 10/22
however [1] 6/2

## I

I -- [1] 16/24
I'd [2] 10/10 10/11
I'll [8] 9/25 10/8 19/11 19/15 19/16 19/23 19/25 20/19
I'm [5] 3/7 3/25 10/10 17/3 19/12
I'm -- [1] 17/3
imaginations [1] 6/4
imagine [1] 8/21
importantly [1] 12/17
imposed [1] 3/18
improper [1] 7/3
in another [1] 15/7
in our [1] 6/1
INC [2] 1/4 1/8
inclusive [1] 21/12
inconsistent [2] 11/16 13/5
inconvenience [1] 18/17
indicated [1] 7/2
informing [1] 17/9
infringement [3] 8/2 8/25 14/1
initial [1] 12/20
injunction [15] 3/7 3/21 4/21 4/23 5/2 9/13 13/2 14/6 17/7 17/11 17/12 17/14 17/20 19/15 19/24
instructive [1] 12/23
interference [1] 15/3
INTERNATIONAL [1] 1/7
interpretation [1] 5/24
intervene [3] 8/11 9/3 15/20

**I**

introduce [2]  10/10 10/11
intuiting [1]  16/24
intuition [1]  17/4
involved [2]  8/7 8/10
involves [1]  11/7
involving [3]  5/13 8/17 12/6
is [61]
is -- [2]  4/11 14/7
isn't [1]  7/12
issue [4]  5/25 11/18 13/10 14/5
issued [1]  7/21
issues [3]  11/19 14/9 20/18
it [52]
it -- [3]  7/15 8/23 20/15
it's [18]  6/4 7/13 8/19 11/5 12/3 12/23
  14/25 15/19 15/21 16/16 16/17 18/7
  18/12 18/17 19/19 19/20 19/21 20/15
  its [2]  4/16 12/8

**J**

Jackson [3]  2/4 21/6 21/17
JAMES [2]  1/11 1/20
January [1]  10/20
Jefferson [1]  1/16
Jim [1]  10/11
join [1]  9/18
joinder [1]  5/3
joined [3]  5/2 9/17 13/20
JR [2]  1/11 1/19
judge [17]  1/12 8/23 10/10 11/5 13/13
  15/20 16/3 16/24 17/11 17/14 17/17 17/4
  17/5 17/11 17/16 18/1 19/20
Judge Sleet [2]  16/3 16/20
judicata [2]  16/16 16/17
judicial [4]  10/17 14/17 16/14 19/22
July [1]  8/3
June [3]  17/8 17/20 19/1
jurisdiction [7]  6/6 6/10 6/13 6/18 7/6
  8/12 13/8
jurisdictional [1]  6/8
jurisdictions [4]  4/12 5/15 6/5 6/9
jury [2]  7/18 7/19
just [10]  6/12 6/14 9/7 9/17 10/3 10/4 11/24
  13/14 14/4 15/11 16/10

**K**

KETCHEY [2]  1/19 10/11
kind [1]  13/5
Kirkwood [1]  2/2
know [9]  4/1 4/3 16/3 17/23 19/3 20/9
  20/10 20/12 20/19
knowledge [1]  18/16
KOBIALKA [1]  1/15

**L**

Laminak [1]  15/4
last [3]  4/20 14/6 18/3
late [1]  4/2
later [1]  13/2
law [2]  15/23 18/16
lawsuits [1]  7/20
lead [1]  20/2
least [2]  6/14 20/10
legal [3]  8/1 17/25 18/7
lengthy [1]  17/24
let [3]  9/25 10/8 20/18
letter [3]  17/19 17/20 19/1
letters [1]  14/12
level [1]  4/6
levitation [1]  11/7

**like [10]**  3/13 4/4 5/11 6/14 10/10 10/11
  14/4 17/4 18/5 18/8
liked [1]  16/25
limitation [1]  11/8
LISA [1]  1/15
litigated [1]  11/21
litigation [3]  10/17 15/11 16/2
little [4]  3/18 11/11 14/20 20/9
live [1]  13/16
LLP [1]  1/15
located [2]  17/3 7/5
long [4]  2/2 4/3 11/18 18/7
longer [1]  10/2
looking [1]  20/15
lot [2]  16/3 16/19
Lynn [3]  2/4 21/6 21/17

**M**

made [3]  14/8 16/13 17/19
make [4]  4/3 12/19 18/19 19/21
make -- [1]  19/21
makes [1]  11/11
management [2]  3/5 19/11
Martina [1]  20/8
matter [4]  10/19 12/13 14/6 20/22
matters [1]  10/22
may [2]  5/24 11/21
maybe [2]  7/8 17/12
MDL [7]  3/8 3/9 3/15 4/8 7/7 19/13 20/5
me [5]  16/20 19/21 20/2 20/5 20/18
mean [1]  14/25
meaning [1]  7/24
Menlo [1]  1/16
MIDDLE [2]  1/1 21/7
minds [1]  12/10
misuse [1]  15/5
months [1]  10/16
MOODY [1]  1/11
more [4]  3/19 10/7 12/16 16/3
morning [3]  3/2 3/3 3/7 10/13
most [1]  6/22
motion [9]  5/8 12/21 14/6 15/20 16/11
  16/13 17/8 18/24 19/14
motions [5]  7/20 8/22 8/22 11/16 14/8
moved [4]  9/14 12/24 13/2 17/10
moving [1]  15/22
Mr [1]  11/9 14/7
Mr. [3]  9/25 10/8 11/1
Mr. Andre [1]  11/1
Mr. Rodgers [2]  9/25 10/8
much [3]  4/11 10/2 10/4
multi-district [3]  3/25 10/17 15/10
multiplicity [8]  3/20 4/5 4/8 4/10 5/12
  5/16 11/14 15/16 16/8
must [2]  13/3 13/4
my [6]  7/18 9/3 17/7 17/9 19/17 21/13

**N**

near [1]  12/12
necessary [1]  9/21
need [2]  10/7 20/1
neither [1]  19/20
never [1]  13/10
new [4]  14/18 14/19 18/3 19/5
next [1]  1/25
night [1]  14/7
no [5]  1/6 4/10 6/17 7/13 16/11
North [1]  2/5
not [17]  3/10 3/25 4/11 5/3 5/5 6/3 7/13
  8/9 9/4 9/14 10/22 11/23 13/24 14/17
  15/19 18/4 19/21
note [1]  12/23

**nothing [2]**  7/2 19/13
notice [1]  5/3
November [3]  1/6 4/2 21/15
now [11]  3/6 5/11 5/12 7/24 14/11 14/22
  15/7 17/21 18/2 20/10 20/13
number [2]  8/25 9/1
numbered [1]  21/12

**O**

obstetricians [1]  17/9
obtained [2]  16/15 19/3
obviously [6]  5/23 5/25 6/5 6/20 6/24
  17/16
October [1]  12/24
off [1]  9/22
office [2]  2/3 12/12
Official [2]  2/5 21/6
Oh [1]  13/9
Okay [3]  4/7 19/9 20/17
oldest [1]  7/11
on -- [1]  8/24
one [18]  3/6 6/14 6/21 7/17 8/7 8/19
  8/25 9/6 11/19 12/4 12/7 13/22 14/5
  14/17 14/25 16/5 18/25 19/19
ones [1]  15/3
only [3]  15/8 15/16 15/19
opinion [1]  6/2
oppose [1]  17/13
opposed [1]  5/4
or -- [1]  8/14
order [2]  9/12 11/6
ordered [1]  8/24
original [3]  13/11 13/23 18/4
other [16]  4/19 8/11 9/20 10/24 12/6
  12/6 12/7 13/15 13/23 15/8 17/1 17/21
  17/23 18/11 18/14 19/20
ought [2]  12/14 19/19
our [19]  4/2 5/11 6/1 9/7 10/15 11/21
  12/10 12/24 15/8 15/16 16/11 18/5 18/5
  18/9 18/13 18/13 18/14 18/16 18/24
our -- [2]  4/2 18/13
out [9]  3/6 3/17 11/3 11/13 11/20 15/9
  16/20 16/21 17/9
out-of-state [1]  6/23
own [2]  6/21

**P**

page [2]  1/25 2/9
pages [1]  21/12
PAndre [1]  1/18
panel [4]  4/3 7/10 10/17 12/18
panel's [1]  10/20
papers [1]  5/4
Park [1]  1/16
part [1]  18/4
particular [3]  4/12 14/12 18/25
parties [5]  5/12 8/21 9/17 19/12 20/4
party [1]  3/6
past [1]  3/18
patent [14]  5/13 5/20 5/21 7/25 8/1 8/7
  8/16 8/24 9/1 11/4 11/7 12/12 15/5
  18/16
patents [29]
patents will [1]  5/23
pattern [2]  11/24 17/15
patterns [1]  11/17
PAUL [2]  1/14 3/11
pending [4]  3/24 5/14 15/14 20/18
Pennsylvania [2]  7/14 8/5
perhaps [1]  12/8
Perkins [1]  1/15
perkinscoie.com [1]  1/18

**P**

personal [1]  6/5
persuasion [1]  20/1
petition [1]  3/15
petitions [1]  12/11
PHARMASTEM [6]  1/4 3/12 4/24 12/24
 13/12 13/21
PharmaStem's [1]  11/25
Phone [3]  1/17 1/23 2/6
pick [2]  6/5 7/11
place [1]  19/7
plaintiff [8]  1/5 1/14 3/12 3/23 4/24 6/25
 18/7 18/20
plaintiffs [1]  4/22
point [13]  3/13 3/14 3/16 3/19 4/4 6/12
 6/19 6/19 9/13 11/3 11/19 13/25 20/7
pointed [1]  11/13
position [2]  5/11 13/5
Post [1]  2/3
post-trial [2]  7/19 11/5
powers [1]  15/24
practices [1]  15/5
precedence [1]  15/23
precisely [1]  11/8
prefer [1]  17/1
preliminary [11]  3/6 3/21 4/21 5/2 9/13
 17/7 17/10 17/11 17/14 19/15 19/24
present [1]  11/16
pretrial [4]  10/23 11/16 15/11 20/6
pretty [2]  3/5 6/1
previous [2]  17/10 19/4
prior [2]  16/2 16/9
probably [1]  18/16
probably -- [1]  18/16
problem [1]  6/17
problems [1]  19/6
procedures [1]  12/2
proceedings [5]  1/11 2/10 10/23 21/10
 21/14
progress [1]  12/14
proper [1]  7/6
propose [1]  11/18
proposed [3]  8/17 10/1 10/4
provided [1]  17/5
providers [2]  8/18 13/24
purposes [4]  4/9 7/7 8/24 18/8
pursuant [1]  11/5
pursue [1]  18/5
pursued [1]  8/2
pursuing [1]  15/17
push [1]  3/17
put [3]  9/22 10/16 12/1

**Q**

question [1]  10/14
quite [3]  4/1 11/13 13/24

**R**

raise [1]  16/1
raised [3]  7/2 16/2 16/9
re-examine [1]  12/11
reach [1]  10/3
reaction [1]  19/17
reason [4]  9/11 16/25 16/25 20/5
reasons [5]  6/20 11/19 12/7 12/15 18/14
received [2]  14/5 14/15
recently [2]  9/17 13/21
refers [1]  11/9
regard [1]  11/20
regarding [11]  7/16 8/18 9/10 9/19 14/6
 14/8 17/7 17/8 17/20 17/22 18/15

regarding -- [1]  7/16
related [4]  7/24 11/11 12/5 19/18
relates [2]  11/23 11/25
relations [1]  15/4
relationship [1]  11/1
relatively [1]  11/18
remedies [1]  14/21
remedy [12]  14/14 14/15 14/17 15/8
 15/16 15/19 16/14 16/17 17/6 17/19 18/13
 18/25 19/3
report [2]  21/10 21/14
Reported [1]  2/4
Reporter [4]  2/2 2/11 21/1 21/6
represent [1]  3/11
required [3]  4/15 5/17 10/7
requires [1]  6/9
res [2]  16/16 16/17
res judicata [1]  16/16
resolved [2]  19/13 19/19
respect [1]  18/19
respectfully [2]  10/15 10/25
restraining [1]  9/12
resulted [1]  7/18
retain [1]  18/8
retrial [2]  8/24 11/4
right [14]  6/16 6/18 6/25 9/21 10/9
 12/17 14/2 15/20 17/4 18/8 20/13 20/13
 20/17 20/21
rights [1]  18/6
ripe [1]  14/18
risk [1]  11/14
RODGERS [5]  1/20 9/25 10/8 10/11
 14/7
round [1]  7/20
RPR [2]  2/4 21/17
ruling [3]  12/19 12/21 17/6
rulings [1]  11/16

**S**

safe [1]  8/19
said [8]  10/6 11/1 12/25 13/2 16/10
 18/20 18/24 21/14
same [17]  3/23 4/13 5/9 5/10 5/12 5/13
 6/7 7/25 11/8 11/15 14/24 15/6 15/6
 15/17 19/2 19/7 19/23
say [2]  8/20 14/23
saying [4]  8/7 14/17 16/7 16/13
schedule [2]  11/18 12/16
scheduled [1]  11/4
scheduling [1]  11/17
second [2]  14/23 14/24
see [4]  10/16 18/9 18/10 19/13
seem [3]  3/5 20/1 20/5
seems [1]  19/18
sense [1]  11/11
sent [1]  17/9
Senterfitt [1]  1/20
separate [5]  5/20 8/6 8/20 20/3 20/4
separately [1]  11/12
September [1]  9/1
set [4]  3/4 8/25 14/18 16/12
several [2]  10/16 14/11
shake [1]  11/20
Sherrill [3]  2/4 21/6 21/17
shorthand [2]  21/10 21/13
shortly [2]  8/21 10/21
should [10]  4/6 11/4 11/20 13/1 14/18 16/2
 16/8 18/20 18/21 18/22
side [1]  18/11
similar [1]  11/17
simply [1]  12/25
sitting [1]  18/11

Sleet [11]  13/13 15/20 16/3 16/20 16/25
 17/4 17/5 17/11 17/16 18/1 19/20
Sleet's [1]  11/5
slight [1]  14/20
slightly [1]  5/24
small [1]  18/9
so [27]
solve [1]  15/16
some [13]  3/8 8/11 10/23 12/3 12/8
 13/25 16/25 16/25 17/1 17/1 19/20 20/2
somebody's [1]  5/19
something [4]  6/4 14/25 17/15 17/18
somewhere [2]  6/11 6/15
sought [9]  14/14 14/15 14/16 14/22
 16/14 17/6 17/19 18/25 19/12
Sounds [1]  6/14
South [1]  1/21
spirit [1]  10/5
split [1]  10/5
standards [1]  20/11
STATE [1]  21/3
stated [2]  16/12 21/11
statements [1]  14/8
STATES [3]  1/1 1/12 21/7
stay [1]  19/12
still [2]  15/12 20/17
straightforward [1]  6/1
strong [1]  20/5
stupid [1]  17/2
sue [1]  7/6
sued [6]  6/21 9/10 13/22 14/1
suggestion [1]  10/15
suing [1]  7/5
Suite [2]  1/22 2/5
suited [1]  7/1
summer [1]  9/22
supposed [1]  20/11
Supreme [1]  20/16
sure [2]  3/25 13/25
survive [1]  4/15
sustain [1]  14/18
sustained [1]  17/24

**T**

take [5]  3/10 4/3 12/3 12/8 20/2
taking [3]  3/8 4/9 7/7
talking [1]  14/10
TAMPA [7]  1/2 1/7 1/22 2/3 2/6 7/5 21/8
tell [2]  19/17 19/25
temporary [1]  9/12
than [5]  15/9 16/3 16/20 18/14 19/7
Thank [5]  13/6 14/3 19/10 20/20 20/21
that [108]
that -- [3]  14/21 14/25 17/18
that's [22]
the -- [9]  3/18 5/1 5/6 9/6 9/16 14/5
 14/12 16/5 16/14
their [12]  5/4 6/21 6/21 6/24 14/16 15/1
 16/7 17/17 17/21 17/22 18/18 18/25
them [20]  6/22 7/6 7/6 7/16 9/8 10/7
 11/11 14/21 15/12 15/13 15/17 15/22
 15/24 16/2 17/10 17/24 18/11 18/17
 20/4 20/19
then [6]  4/8 5/9 7/19 8/15 19/16 20/3
theories [2]  5/17 8/1
theory [6]  13/24 13/25 13/25 16/17
 16/22 18/13
theory -- [1]  13/24
THERAPEUTICS [2]  1/4 3/12
there [12]  3/17 3/17 4/11 5/20 5/23 7/15
 11/3 12/11 14/7 18/2 19/7 19/21
there's [5]  3/8 5/16 14/20 17/25 18/11

## T

thereafter [1]  10/21
these [20]  3/8 6/21 9/16 10/22 11/2
  11/10 11/20 12/6 12/6 12/11 12/13
  12/25 13/3 13/20 14/9 14/9 16/1 19/18
  20/3 20/18
they [61]
they -- [1]  9/7
they're [1]  7/25
they've [3]  14/16 18/24 19/3
thing [2]  12/17 14/25
things [2]  11/1 12/19
think [18]  4/2 5/15 5/22 5/25 6/2 7/1 7/5
  8/19 10/1 12/15 12/19 12/23 14/20
  16/10 17/3 17/12 18/21 18/22
this [60]
those [10]  4/14 5/8 6/9 8/13 12/15 14/23
  15/6 15/14 17/23 18/3
thought [1]  3/8
three [9]  7/21 8/14 8/15 8/15 8/18 9/19
  11/9 11/24 14/11
through [2]  12/9 20/7
thus [1]  3/20
time [10]  9/7 9/8 9/9 10/2 10/7 10/20
  12/3 12/8 12/16 12/17
to -- [1]  6/24
to introduce [1]  10/10
today [1]  15/2
too [1]  5/25
Track [1]  12/1
trade [1]  15/5
TRANSCRIPT [1]  1/11
transcription [1]  21/13
transfer [3]  6/23 7/8 7/9
transfer -- [1]  7/8
transferred [2]  6/20 15/10
trial [7]  7/18 7/22 9/22 10/1 10/4 15/15
  17/10
trials [1]  20/3
tried [1]  10/5
true [3]  11/13 15/21 21/13
try [5]  9/18 10/3 15/12 15/12 17/24
trying [5]  6/15 8/11 9/2 19/22 20/11
tune [1]  17/17
two [17]  3/24 6/8 7/15 7/17 7/21 7/22
  8/7 8/19 9/1 12/4 13/1 13/12 14/19
  15/17 17/12 18/11 19/6

## U

under [1]  12/1
understand [1]  3/6
unfair [1]  15/5
Union [1]  1/21
UNITED [3]  1/1 1/12 21/7
Unless [1]  6/10
until [1]  12/18
up [2]  6/24 14/7
upfront [1]  19/17
us [4]  6/9 7/1 18/12 18/12
use [1]  20/11
usually [1]  18/11

## V

various [4]  6/9 8/18 9/20 11/3
vary [2]  5/24 6/3
verdict [2]  7/18 7/19
very [5]  7/22 8/21 11/21 12/12 12/25

## W

want [5]  3/9 5/20 6/20 6/23 11/21
wanted [1]  17/20

wants [1]  3/6
was [23]
was -- [1]  4/14
way [4]  11/23 12/8 12/13 18/9
we [58]
We'd [1]  3/13
we'll [2]  7/16 15/14
we're [9]  3/19 3/22 5/25 13/9 13/24
  14/10 14/17 15/8 18/9
we've [4]  6/6 7/1 7/3
week [2]  4/20 18/3
weeks [1]  13/2
well [12]  5/22 7/5 7/11 7/15 8/4 8/22
  9/18 9/21 11/21 15/19 18/1 20/17
went [3]  5/9 9/17 9/11
were [8]  4/23 9/19 10/6 13/11 13/22
  14/9 16/8 18/3
what [19]  3/9 3/19 7/2 7/15 9/5 9/25
  10/14 10/16 11/8 13/25 14/21 15/23
  16/10 17/22 18/24 19/13 19/16 20/3
  20/12
what's [5]  3/14 3/20 5/6 8/10 12/5
when [3]  4/1 12/24 18/10
where [6]  7/14 11/20 13/13 19/6 19/25
  19/25
wherever [2]  7/8 7/9
whether [4]  3/10 5/1 10/22 19/19
which [11]  3/25 4/14 4/15 4/22 8/10
  8/14 9/2 11/8 11/9 12/13 12/13
while [2]  3/9 10/16
who [3]  5/18 10/11 13/18
who -- [1]  5/18
why [5]  6/23 9/21 12/3 12/7 20/5
will [9]  4/1 4/3 5/23 6/3 7/9 8/20 12/8
  12/11 20/1
willing [1]  13/7
work [1]  12/8
would [25]
would -- [1]  11/17
wouldn't [2]  5/20 16/4

## Y

yards [1]  6/22
years [3]  7/15 14/11 14/11
yes [2]  13/9 16/22
yesterday [1]  4/19
you [25]
you're [4]  4/7 8/7 16/7 20/11
your [26]
Your Honor [13]  3/3 4/10 6/13 7/13 9/24
  10/13 11/13 12/23 14/4 16/23 17/3
  19/10 20/20
Your Honor's [1]  10/14

## Z

Zafran [4]  7/4 13/15 13/18 14/1